James Welborn was convicted in four cases of the possession of a forged instrument, in violation of Alabama Code 1975, § 13A-9-6. He was sentenced to consecutive terms of imprisonment of seven years in each case. On this appeal from those convictions, he raises five issues.
 I
The State proved that the defendant, without authorization, had 1,000 blank checks printed with the name of a nursery business called "Botanical Concepts." These checks were forged and made payable to former employees of Botanical Concepts. There was evidence that the checks were cashed by various former employees and that the proceeds were "split" with the defendant. At trial, the State introduced into evidence nine checks written to former employees of Botanical Concepts. The indictments charged the defendant with possessing only four of those *Page 2 
checks. The admission of the remaining five checks was not error. In a prosecution for the possession of forged checks, evidence that the defendant possessed forged checks other than those charged in the indictment is admissible to prove the requisite criminal intent, C. Gamble, McElroy's AlabamaEvidence § 70.01(11) (3d ed. 1977); guilty knowledge, McElroy
at § 60.01(4); and identity, McElroy at § 69.01(8). Such "other crimes" evidence is also admissible to show a single plan, design, scheme, or system. McElroy at § 69.01(6).
 II
The defendant contends that the State was allowed to elicit testimony from witness John Hutchinson about a conversation he had had with the defendant that tended to show the defendant's criminal intent and guilty knowledge, without first establishing the time at which the conversation occurred.
Hutchinson testified that "one day" in 1985 the defendant came to his house in Wilmer. It was "about 4:00 one evening" on a "weekday" that was "warm." This was the extent of the predicate for the admission of the conversation between Hutchinson and the defendant.
"The time and place of the making of an extrajudicial admission and the circumstances surrounding the admission bear only on its weight and not on its competency as evidence. . . ." 31A C.J.S. Criminal Law § 298 (1964). "The state may not only prove admissions and incriminating statements by accused but also may show when and where they were made, but, where testimony of admissions by accused is of a substantive nature, it is not necessary to fix the time when and the place where the statements were made." 22A C.J.S. Criminal Law § 730 (1961). "That the witness who testifies to such declarations [against interest] cannot remember the time when or the place where they were made, is a circumstance going to the credibility of his testimony, but it cannot render the declarations themselves inadmissible." Walker v. Blassingame,17 Ala. 810, 813 (1850). See also Alexander v. State,370 So.2d 330, 331 (Ala.Cr.App.), cert. denied, Ex parte Alexander,370 So.2d 332 (Ala. 1979). Extrajudicial statements of a party "are admissible as admissions of the party, and in such event no predicate is necessary." Dickson v. Dinsmore, 219 Ala. 353,355, 122 So. 437 (1929). We find these same principles applicable in a criminal prosecution with the additional requirement that the State is required to prove the voluntariness of any admission or declaration made by the accused. Guenther v. State, 282 Ala. 620, 623, 213 So.2d 679
(1968), cert. denied, 393 U.S. 1107, 89 S.Ct. 916,21 L.Ed.2d 803 (1969). "The general rule is well established that the trial court is vested with judicial discretion in determining the sufficiency of preliminary evidence offered to establish a predicate for the admission of other evidence on the trial, to be exercised in the particular case, and this discretion will not be reviewable except for gross abuse." McKee v. State,253 Ala. 235, 238, 44 So.2d 781 (1949).
 III
Prosecution witness Fred Howell testified that sometime after he ended his employment with Botanical Concepts, a check was deposited to his bank account. Howell testified that he did not authorize the use of his name on the money order that was used to pay Acme Printing for the 1,000 checks printed for Botanical Concepts.
The defendant now objects to the admission of Howell's testimony on the ground that the State failed to connect the defendant to the check deposited to Howell's bank account. Since this is not the objection that was made at trial, that ground is not preserved for review and cannot be raised on appeal. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith,526 So.2d 880, 882 (Ala. 1987); McElroy at § 426.01(11).
 IV
The defendant claims that he was denied a speedy trial. The relevant facts are listed in chronological order. *Page 3 
 June 28, 1985 Indictment. July 22, 1985 Arraignment. October 31, 1985 Case "reset at the defendant's request to next available docket." December 16, 1985 The defendant made new bond. January 9, 1986 "Reset by agreement due to absence of" defense counsel. March 10, 1986 Defendant filed a motion for exculpatory material. March 11, 1986 Motions to continue and consolidated filed by State. March 13, 1986 "Reset trial to next available Docket." March 18, 1986 Motion for handwriting exemplar filed by defendant. April 4, 1986 Hearing on motion for exculpatory material filed by defense counsel was continued after defense counsel "failed to appear." Hearing was ordered "to be reset when requested" by defense counsel. May 12, 1986 Motion for handwriting exemplar was reset. At a "status hearing," the defendant represented he would go to trial. June 9, 1986 "State's motion for continuance — GRANTED." December 16, 1986 State's motion for continuance granted over defendant's objection. Pursuant to the defendant's motion for a handwriting exemplar, the trial court ordered that the case not be reset for trial until the samples had been returned from the Alabama Department of Forensic Sciences. May 14, 1987 The defendant's motion for a speedy trial (filed April 14, 1987) was reset because defense counsel was in federal court. The motion merely requested that the defendant's case be set for trial "as soon as possible." The motion did not allege a denial of speedy trial or request other relief. May 21, 1987 The defendant's motion for speedy trial was "reset by agreement." May 28, 1987 "Defendant's motion for speedy trial is granted." October 6, 1987 "Case continued on defendant's motion." December 9, 1987 "Trial of case was continued on defendant's motion." April 4, 1988 "Trial continued on state's motion over objection of defendant." June 20, 1988 Trial began. The defendant was convicted on June 22, 1988.
These times and events have been reconstructed from the case action summary sheets of the trial court contained in the record on appeal. Although the defendant did request a speedy trial, we find no instance where he alleges that he was denied a speedy trial or where he sought to have the indictment dismissed on that ground. From the record, it appears that the allegation of the denial of a speedy trial was never presented to the trial court. On that basis, we find that the issue of the alleged denial of speedy trial has not been preserved for review.
Even if this court were to find that the matter had been properly preserved for review, we would find no violation of the defendant's right to a speedy trial. Although there was a three-year delay between the defendant's indictment and his trial, at least 15 months of that delay is attributable to the defendant's requests for continuances. Some period of delay must also be credited to the defendant's request for discovery. Because the speedy trial issue was not presented to the circuit court, the record contains no explanation for the delays sought by the State or the defendant. Neither has the defendant shown any prejudice caused by or resulting from the delay. Moreover, we consider that the request for speedy trial was waived when two continuances were granted at the defendant's request after the motion for speedy trial had been granted.
 V
We reject the defendant's claim that he was denied the effective assistance of trial counsel. Although the defendant filed a pro se motion for new trial, he did not challenge the effectiveness of trial counsel. The issue of the alleged ineffectiveness of trial counsel was never presented to the circuit court and is raised for the first time *Page 4 
on appeal. " '[T]he now settled rule [is] that claims of ineffective assistance of counsel may not be considered for the first time on direct appeal." Jackson v. State, 534 So.2d 689,692 (Ala.Cr.App. 1988); See Project: Eighteenth Annual Reviewof Criminal Procedure: United States Supreme Court and Courtsof Appeals 1987-88, 77 Georgetown L.J. 489, 953 (1989).
The defendant now argues that trial counsel was ineffective because he was not adequately prepared to try the case because he was standing in for his law partner, because he did not object to the testimony of Fred Howell (See Part III), because he did not object to a leading question asked of the victim which assumed the checks were forged, because he had not seen two exhibits (checks) introduced by the State, and because he asked a handwriting expert to perform some comparisons during a lunch recess during the trial.
Although we intend no criticism and understand the position of defendant's appellate counsel in raising this issue, we find that it is without merit and is based on speculation and hindsight. The test for determining ineffectiveness is set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). In this case, there has been no showing that trial counsel's performance fell below an objective standard of reasonableness and no showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
We are convinced that the defendant received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.